UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B.A. on behalf of M.G., Jr., a minor,

               Plaintiff,

         -v-                      1:13-CV-1257

CITY OF SCHENECTADY SCHOOL
DISTRICT, MARIANNE CRISTELLO
in her individual and official capacity,
BARBARA COFFEY in her individual
and official capacity, PATRICIA PASER
in her individual and official capacity,
JOHN YAGIELSKI in his individual and
official capacity, JOHN DOE(S), and
JANE DOE(S),

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

BOSMAN LAW FIRM, LLC          AJ BOSMAN, ESQ.
Attorneys for Plaintiff              DANIEL W. FLYNN, ESQ.
201 West Court Street
Rome, NY 13440

GIRVIN, FERLAZZO LAW FIRM    DANIEL RUBIN, ESQ.
Attorneys for Defendants        PATRICK J. FITZGERALD, III, ESQ.
20 Corporate Woods Boulevard
Albany, NY 12211

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

     Plaintiff B.A. ("B.A." or "plaintiff") has filed this civil rights action on behalf of her son

M.G., Jr. ("M.G.") against defendants City of Schenectady School District (the "District");

Marianne Cristello ("Mrs. Cristello"), a first-grade teacher at the District's Woodlawn Elementary School ("Woodlawn"); Barbara Coffey, the Principal of Woodlawn ("Principal Coffey"); John Yagielski, the District's Interim Superintendent ("Superintendent Yagielski"); Patricia Paser, the Assistant to the Superintendent ("Assistant Paser"); and John and Jane Does (the "Does") (collectively "defendants").

B.A.'s operative complaint asserts two federal claims pursuant to 42 U.S.C. § 1983, the first alleging a violation of M.G.'s Fourteenth Amendment right to substantive due process during an in-school incident with his first-grade teacher while the second is based on a later instance of discipline allegedly meted out in retaliation for First Amendment-protected activity. Plaintiff's complaint includes related state law claims for assault and battery, various theories of negligence, intentional infliction of emotional distress, and retaliation.

Defendants have moved pursuant to Federal Rule of Civil Procedure ("Rule") 56 seeking summary judgment on all of B.A.'s claims. The motion has been fully briefed and will be decided on the basis of the submissions without oral argument.

## II. **BACKGROUND**[1]

During the 2011-2012 school year, M.G. was a student in Mrs. Cristello's first-grade class at Woodlawn. On Friday, December 16, 2011, M.G., who had recently turned six years old, attended the annual Woodlawn holiday concert with his parents. Although M.G. wanted to go home after the concert ended around 11:00 a.m., both parents had to go back to work

---

[1] The following facts are drawn principally from the Statement of Material Facts filed by defendants in accordance with Local Rule 7.1(a)(3). See ECF No. 46-2. Unless otherwise noted, these facts have been admitted by plaintiff in her responsive filing. See ECF No. 53. For purposes of this motion, the facts in the record will be construed in the light most favorable to plaintiff, the non-movant here, with all reasonable inferences drawn and all factual ambiguities resolved in her favor. See, e.g., Capobianco v. City of New York, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

and instead returned M.G. to Mrs. Cristello's classroom. Before B.A. left, she explained to Mrs. Cristello that "I won't be able to take him today" and warned her that "[h]e's going to be a little upset."

B.A.'s instincts proved correct. Even though his parents had just refused to take him home with them, M.G was still set on leaving school for the day and continued to express this desire to all those who remained with him in Mrs. Cristello's classroom. Soon enough, G.A., a classmate's parent who had also attended the holiday concert that morning, overheard M.G.'s pleas and offered to let him use her cell phone to call his mother. M.G. accepted G.A.'s offer and began to dial plaintiff.

Mrs. Cristello was not present when this initial exchange between M.G. and G.A. occurred, but when she saw M.G. using a cell phone she grabbed M.G. by the shoulders "so hard that you could see red marks from where her fingers had been," shook him while screaming at him "maybe 13" or "like 20 times" to "stop crying," and forcefully pushed him into a seated position on a chair.[2] According to M.G., Mrs. Cristello then forced him to stay seated in this chair while the other children were allowed to sit on a rug on the floor of the classroom and play hangman.

G.A. witnessed the incident and alerted B.A., who called M.G.'s father and directed him to immediately return to Woodlawn to pick up M.G. When M.G.'s father arrived at Woodlawn's attendance office a short time later to sign M.G. out of school for the day, Mrs. Cristello entered the office, visibly upset, and spoke with M.G.'s father. Although M.G.'s father does not recall the precise details of this confrontation, he claims Mrs. Cristello

---

[2] Presumably, she also returned the cell phone to G.A. Notably, M.G. acknowledged during his testimony that students in Mrs. Cristello's class were not allowed to use cell phones. In any event, defendants insist that "Mrs. Cristello did not move towards, or place her hands on, [M.G.] at any time."

"tapped her chest" and stated something to the effect of "I don't have time for this, or I have a classroom full of kids, I don't have time for this" before walking out.[3]  Over the weekend, M.G. suffered from nightmares about the cell phone incident and was reluctant to return to school the next week because "he was afraid of [Mrs.] Cristello and her yelling."

The following Monday, December 19, 2011, B.A. went to Woodlawn to discuss the cell phone incident with Principal Coffey, who met with plaintiff and Mrs. Cristello.  At that time, plaintiff demanded an apology from the school, but Principal Coffey and Mrs. Cristello refused to apologize.  Later that day, plaintiff reported the incident to Assistant Paser, who initiated an investigation.  At some point thereafter, plaintiff also e-mailed Superintendent Yagielski about the incident, reported the encounter to Child Protective Services, and informed the local police.[4]

On January 4, 2012, Assistant Paser's investigation concluded that Mrs. Cristello had not touched M.G. during the incident.  Nevertheless, Superintendent Yagielski decided an outside investigation was also warranted.  This investigation was conducted in early January 2012 by Stacy Barrick, an attorney with Whiteman, Osterman, and Hannah LLP.

Attorney Barrick interviewed a number of witnesses and likewise determined that although Mrs. Cristello had "raised her voice" to M.G., "the allegation that Mrs. Cristello grabbed [M.G.'s] arm could not be substantiated."  Attorney Barrick concluded that "no

---

[3]  Defendants dispute this characterization and instead assert Mrs. Cristello was merely expressing her concern about a possible safety issue.  As she explained during her deposition, "I wasn't sure that he knew this adult and we're very careful to warn students and especially young children about taking anything or interacting with people they don't know, so I was concerned about that."

[4]  The precise timing of events recounted in this paragraph is unclear.

actions need to be taken with respect to Mrs. Cristello and that the investigation [should] be closed."

On January 27, 2012, Superintendent Yagielski presented M.G.'s parents with the findings from Attorney Barrick's investigation and offered to move M.G. into a different first-grade classroom. M.G.'s parents declined this offer. The parties agree that, aside from this cell phone incident, "neither [M.G.] nor any other person had ever made an allegation of child abuse or any other kind of complaint against Mrs. Cristello," who had been a teacher at Woodlawn for thirty-seven years by that time.[5] M.G. continued to attend Mrs. Cristello's class at Woodlawn.

On May 24, 2012, M.G. was near a stack of plastic bins in Mrs. Cristello's classroom when one of the bins fell and hit him on the head. Sharon Clark, the classroom aide, escorted M.G. to the school nurse's office as a precautionary measure. When M.G. returned from the nurse's office, his classmates were engaged in a recess period outside. However, neither Mrs. Clark nor Mrs. Cristello would allow M.G. to participate in this free period. Instead, they made him sit on a bench in "time out" as "discipline" for his behavior.[6] According to M.G., he was forced to sit out for about ten to fifteen minutes of this thirty-minute recess.

Five days later, on May 29, 2012, B.A. complained to Superintendent Yagielski that when she had picked her son up from school the day the bins had fallen on his head, M.G.'s face was red from the sun "because Mrs. Clark would not allow him to play with his

---

[5]  B.A. claims "she may have complained about Mrs. Cristello having turned the lights in the classroom on and off and raising her voice to [M.G.] in the past, but she only complained to Mrs. Cristello."

[6]  Defendants assert that only Mrs. Clark made this decision and that M.G. was forced to sit out of recess as a precautionary measure in the wake of his head injury.

friends" during recess.  Notably, however, when the nurse had followed up with M.G. about his head injury that day, he had "neither complained of nor exhibited symptoms of sunburn."

## III. LEGAL STANDARDS

### A. Summary Judgment

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); see also Anderson, 477 U.S. at 247.

A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim.  Anderson, 477 U.S. at 250 n. 4.  The failure to meet this burden warrants denial of the motion.  Id.  However, in the event this initial burden is met, the opposing party must then show, through affidavits or otherwise, that there is a material issue of fact for trial.  Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party.  Jeffreys, 426 F.3d at 553.  In sum, summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's]

favor."  Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B.  42 U.S.C. § 1983

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  Wyatt v. Cole, 504 U.S. 158, 161 (1992).  However, "[s]ection 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).

Accordingly, to prevail on a § 1983 claim, a plaintiff must show (1) the deprivation of a right, privilege, or immunity secured by the Constitution and its laws by (2) a person acting under the color of state law.  See 42 U.S.C. § 1983.

### C.  Supervisory Liability

"It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Odom v. Matteo, 772 F. Supp. 2d 377, 403 (D. Conn. 2011) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).

"The personal involvement of a supervisory defendant may be shown by evidence that:  (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the

defendant exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring." Odom, 772 F. Supp. 2d at 403 (quoting Colon, 58 F.3d at 873); see also Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014) (noting that the continued vitality of all five Colon factors set forth above remains an open question post-Iqbal).

### D. Municipal Liability

"Before a municipality can be held liable under § 1983, it must be shown to have been 'the moving force of the constitutional violation.'" Carmichael v. City of New York, 34 F. Supp. 3d 252, 262-63 (E.D.N.Y. 2014) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)); see also Cash v. Cnty. of Erie, 654 F.3d 324, 341-42 (2d Cir. 2011) (equating "moving force" and "proximate cause").

"In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove:  (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (citation omitted).

"The fifth element reflects the notion that 'a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.'" Cown v. City of Mt. Vernon, 95 F. Supp. 3d 624, 636 (S.D.N.Y. 2015) (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997)).  Therefore, this element "can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort.'" Roe, 542 F.3d at 36 (citation omitted).  Importantly, however, a "municipal policy may be pronounced or tacit and reflected in either action or inaction." Cash, 654 F.3d at 334.

Accordingly, a plaintiff may satisfy this fifth element with evidence of: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Cown, 95 F. Supp. 3d at 637 (quoting Brandon v. City of New York, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010))

## IV. **DISCUSSION**

The parties' submissions make clear that they disagree about a broad range of ancillary matters surrounding the two in-school incidents at the heart of this lawsuit. In addition to the various factual disputes noted above, defendants' memoranda also emphasize that there is an absence of medical records corroborating M.G.'s claims of physical and emotional injury arising from either the cell phone or "time out" incidents and call into doubt the credibility of B.A.'s assertion that she was qualified to administer psychological treatment at home by providing "Christian counseling" to her son. Defs.' Reply Mem. at 6.

Defendants' submissions also explore in detail the apparently contradictory aspects of M.G.'s parents' various sworn statements as well as M.G.'s own testimony, which was given first when he was just six years old and then three years later during a July 17, 2015 deposition. Compare, e.g., M.G.'s 50-h exam, ECF No. 50-5 (claiming both of his parents picked him up from Woodlawn the day of the cell phone incident, insisting this incident

occurred in November, and repeatedly denying the later "time out" incident occurred at all), with, e.g., M.G.'s EBT, ECF No. 50-6 (claiming his mother picked him up from Woodlawn the day of the cell phone incident and now recalling that Mrs. Cristello "gave [him] a sunburn" when she made him sit outside for about half of a thirty-minute recess period).

At bottom, however, it is unnecessary to address these auxiliary disputes to decide the straightforward question that must be addressed at this juncture—whether, accepting the most serious version of events set forth by B.A. as true and viewing the evidence in the record in the light most favorable to her, a reasonable jury could return a verdict in her favor on one or more of her claims. See Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994) (Cardamone, J.) (emphasizing that "the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried"). With this goal in mind, a careful analysis of plaintiff's federal claims is in order.

## A. **Substantive Due Process**

B.A.'s substantive due process claim is based on Mrs. Cristello's alleged mistreatment of M.G. during the cell phone incident that occurred at Woodlawn on December 16, 2011. Defendants assert that the conduct alleged is categorically insufficient to give rise to a substantive due process violation. Plaintiff responds that this case involves a six-year-old student "who was physically mishandled by a teacher" and asserts that, "[i]f such conduct does not rise to the level of conscious [sic] shocking, then it is questionable whether any conduct would."

"[T]he substantive due process guarantee of the Fourteenth Amendment protects individuals from 'conscience-shocking' exercises of power by government actors." Johnson

v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 252 (2d Cir. 2001); see also Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir. 1999) ("For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.'").

"Numerous cases in a variety of contexts recognize [substantive due process] as a last line of defense against those literally outrageous abuses of official power whose very variety makes formulation of a more precise standard impossible." Hall v. Tawney, 621 F.2d 607, 613 (4th Cir. 1980). For instance, the Second Circuit has recognized that "[t]he substantive component of due process encompasses, among other things, an individual's right to bodily integrity free from unjustifiable government interference." Votta ex rel. R.V. & J.V. v. Castellani, 600 F. App'x 16, 18 (2d Cir. 2015) (summary order) (citation omitted). Our Circuit has likewise suggested that children in the custody of the state may also have a substantive due process right "to be free from unreasonable and unnecessary intrusions into their emotional well-being." Id. at 19 (identifying doctrinal developments but ultimately declining to "reach the question of whether such a right exists or might extend to public high school students").

Importantly, however, the amorphous nature of the protections afforded by substantive due process also implicates "a particular need to preserve the constitutional proportions of constitutional claims, lest the Constitution be demoted to . . . a font of tort law." Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2d Cir. 2000) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)); see also Daniels v. Williams, 474 U.S. 327, 332 (1986) ("Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of

conduct to regulate liability for injuries that attend living together in society.").

Therefore, although the Second Circuit has "declined to create bright-line rules in this area," Castellani, 600 F. App'x at 18, a review of the applicable case law from our Circuit makes clear that "the threshold for establishing a constitutional tort in a school environment setting [remains] high." J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist., 898 F. Supp. 2d 516, 538 (E.D.N.Y. 2012).[7]

For example, in Bisignano v. Harrison Central School District, the district court analyzed a substantive due process claim asserted by an eighth-grader who alleged that her gym teacher had "grabbed and twisted her left wrist, and yelled at her to give him back his twenty dollars." 113 F. Supp. 2d 591, 594 (S.D.N.Y. 2000). The district court had little trouble rejecting this claim on summary judgment, concluding that the injuries alleged by the student, which "amounted to red marks on her arms, stomach upset and headaches," did not "shock the conscience" and were therefore insufficient to implicate the protections of substantive due process. Id. at 600.

Two years later, in Smith ex rel. Smith v. Half Hollow Hills Central School District, the Second Circuit analyzed a similar substantive due process claim asserted by a seventh-grader whose technology class teacher had "slapped [him] in the face at full-force with an open hand, allegedly causing [ ] both great physical pain and severe emotional pain for which he underwent psychotherapy." 298 F.3d 168, 170 (2d Cir. 2002) (per curiam). In

---

[7] "Factors to be considered in excessive force claims [i]n determining whether the constitutional line has been crossed include the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." EC ex rel. RC v. Cnty. of Suffolk, 882 F. Supp. 2d 323, 351 (citations and internal quotation marks omitted).

rejecting his claim, the Court concluded that the "wrong perpetrated . . . , though regrettable, simply is not of constitutional proportions."  Id. at 173.

Seven years after that, the district court in Perrin v. Canandaigua City School District relied on the Second Circuit's guidance in Half Hollow Hills to likewise dismiss at the pleadings stage a student's substantive due process claim based on allegations that his wrestling coach had verbally assaulted him during a match and physically assaulted him afterward by pulling his arms behind his back, forcing him through the door to the locker room, and "punch[ing] and pok[ing] him in the chest while berating him with the use of foul, profane and demeaning language."  2008 WL 5054241, at *1, 3-4 (W.D.N.Y. Nov. 21, 2008).  As in Half Hollow Hills, the Court concluded that the "alleged acts may have been wrongful, but they did not violate [the student's] *constitutional* rights."  Id. (emphasis in original).

More recently, in 2011 this Court rejected a substantive due process claim asserted by a seventh-grade student who alleged that the school principal had "grabbed his arm hard" while swearing at him, that a teacher had "yelled and spat on" him, and, on a different occasion, that the school custodian had "put his hands on [him] in the school cafeteria in order to physically force [him] to sit down."  Faccio v. Eggleston, 2011 WL 3666588, at *2, *11 (N.D.N.Y. Aug. 22, 2011).  In rejecting this claim, the Court concluded that "an examination of the case law—especially [Half Hollow Hills]—shows that [defendants'] alleged actions do not rise to the level of shocking the [conscience]."  Id. at *12.

Just last year, the Second Circuit returned to the basic parameters it laid out in Half Hollow Hills to affirm Judge McAvoy's rejection of a substantive due process claim asserted by student-athletes against a football coach who allegedly handled them roughly, grabbed

their facemasks and shoulder pads, shook them, and screamed at them "in such close proximity that he spat on them." Votta ex rel. R.V. & J.V. v. Castellani, 600 F. App'x 16, 17-18 (2d Cir. 2015) (summary order).  There, the Second Circuit concluded that "[s]uch minor infringement, even considered in the aggregate, is certainly insufficient to permit a reasonable jury to determine that it shocked the conscience."  Id. at 19.

Notably, these cases do not rule out the possibility that improper conduct by teachers or coaches may be sufficiently conscience-shocking to give rise to a violation of constitutional magnitude.  For example, in Johnson v. Newburgh Enlarged School District, the Second Circuit affirmed the denial of qualified immunity to a gym teacher who allegedly assault a student by lifting him off the ground by his neck, dragging him across a gym floor, choking him, slamming the back of his head against the bleachers four times, ramming his forehead into a metal fuse box, and punching him in the face.  239 F.3d 246, 249 (2d Cir. 2001).  Likewise, in Knicrumah v. Albany City School District, this Court rejected a gym teacher's bid for qualified immunity where the student-plaintiff claimed the teacher had grabbed him, slammed him against a solid brick wall "without reason or provocation," and held him there, and threatened to "have him kicked off the track team."  241 F. Supp. 2d 199, 205, 211 (N.D.N.Y. 2003).

Keeping in mind the guideposts these cases provide, B.A.'s substantive due process claim must fail.  Plaintiff asserts that when Mrs. Cristello caught M.G. using a cell phone in her classroom without her permission, she immediately grabbed him by both arms, shook him by the shoulders, slammed him into a chair, and yelled in his face that he should "stop crying" between thirteen and twenty times.  As a result of this incident, M.G. suffered from red marks on his arms, nightmares, and a reluctance to return to school.  Even viewed in the

light most favorable to plaintiff, no reasonable jury could conclude that this incident amounts to the type of "conscience shocking" behavior that implicates the safeguards of substantive due process.

B.A. cites to a Ninth Circuit case, <u>Preschooler II v. Clark County School Board of Trustees</u>, to argue that M.G.'s age—he was only six years old at the time the cell phone incident occurred—is an important additional factor that must be considered in determining whether a reasonable jury could conclude defendants' actions shocked the conscience. 479 F.3d 1175, 1180 (9th Cir. 2007). In <u>Preschooler II,</u> the Ninth Circuit reversed a grant of qualified immunity to a preschool teacher accused of engaging in an ongoing pattern of abuse of a four-year-old autistic student with a serious neurological disease. <u>Id</u>.

Among other things, the alleged physical abuse in that case included "hitting [the child's] head and face," "maliciously body slamm[ing him] into a chair," causing "noticeable bruising to [his] arms [and] . . . . inner thigh regions," and on four occasions forcing him to "walk without shoes across the asphalt" from the school bus to his classroom. 479 F.3d at 1178. In particular, the Court in <u>Preschooler II</u> focused on the allegations of "beating and slamming," specifically distinguishing them from the other alleged instances of abuse, to conclude a viable constitutional claim existed.[8] <u>Id</u>. at 1181.

Of course, M.G.'s relative youth does set him somewhat apart from the middle-school students whose substantive due process claims were rejected in several of the cases set forth above. <u>Compare Preschooler II</u>, 479 F.3d at 1180 (four-year-old child), <u>with Half Hollow</u>

---

[8]  The child's claim was actually analyzed under the Fourth Amendment's "reasonableness" standard. <u>Preschooler II</u>, 479 F.3d at 1181 & n.5; <u>see also</u> <u>EC ex rel. RC v. Cnty. of Suffolk</u>, 882 F. Supp. 2d 323, 349-52 (E.D.N.Y. 2012) (discussing analytical distinctions between seizure- and non-seizure-based constitutional claims by school students).

Hills Cent. Sch. Dist., 298 F.3d at 170 (seventh grader); Faccio, 2011 WL 3666588, at *2 (same); Perrin, 2008 WL 5054241, at *4 (same). Indeed, other courts have also suggested that "the conscience-shocking threshold is more quickly reached in cases where the victim is particularly vulnerable to abuse and is otherwise defenseless." Hatfield v. O'Neill, 534 F. App'x 838, 845 (11th Cir. 2013) (per curiam) (citation omitted) (affirming denial of summary judgment on substantive due process claim alleging that teacher struck severely disabled student in "precise location where she had previously undergone brain surgery").

But even accepting that M.G.'s youth is a particularly relevant consideration, the allegations of Preschooler II are completely distinguishable from the events involved in the cell phone incident here. Simply put, "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." Cnty. of Sacramento, 523 U.S. at 848.

In other words, even accepting the most egregious version of the cell phone incident exactly as it is described in B.A.'s opposition papers and viewing the record evidence in her favor for purposes of this motion, Mrs. Cristello's conduct does not rise to the level of a constitutional violation as a matter of law. Rather than describe conduct that shocks the conscience, the evidence in the record resembles precisely the sort of wrongful acts occurring in a school environment that have been repeatedly held insufficient to state a claim of *constitutional* magnitude. See, e.g., Votta ex rel. R.V. & J.V., 600 F. App'x at 17-18; Half Hollow Hills Cent. Sch. Dist., 298 F.3d at 170; Faccio, 2011 WL 3666588, at *2; Perrin, 2008 WL 5054241, at *4; see also T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla., 610 F.3d 588, 599 (11th Cir. 2010) (rejecting substantive due process claim based on allegation that teacher intentionally tripped autistic child as he left a classroom and observing that "[a] range

of teacher conduct exists that is neither corporal punishment nor so conscience-shocking as to trigger a substantive due process violation").  Accordingly, plaintiff's substantive due process claim must be dismissed.

### B.  First Amendment Retaliation

B.A.'s First Amendment retaliation claim is based on the May 24, 2012 incident where M.G. was required to sit in "time out" after returning from the nurse's office even though his classmates were permitted to enjoy a recess period outside.

"The Second Circuit has described the elements of a First Amendment retaliation claim in several ways, depending on the factual context."  Odermatt v. Way, –F. Supp. 3d–, 2016 WL 3034481, at *12 (E.D.N.Y. May 25, 2016) (quoting Zherka v. Amicone, 634 F.3d 642, 644 (2d Cir. 2011)).  Generally speaking, however, "a plaintiff must establish that:  (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech."  Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 273 (2d Cir. 2011) (citations omitted).

With respect to the second element, "[e]vidence of improper motive 'may include expressions by the officials regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken.'"  Anderson v. City of New York, 817 F. Supp. 2d 77, 96 (E.D.N.Y. 2011) (quoting Blue v. Koren, 72 F.3d 1075, 1084 (2d Cir. 1995)).  However, "First Amendment student speech cases ordinarily involve explicit censorship or avowedly disciplinary action by school administrators."  Cox, 654 F.3d at 273 (collecting cases).  Accordingly, there is "no clear definition of 'adverse action' in the school context."  Id.

Looking to guidance outside the school context, "an adverse action in a First Amendment retaliation case is 'conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Cox, 654 F.3d at 273 (citation omitted).[9] "Under this 'objective' standard, an adverse action must be more than 'de minimis' to support a First Amendment retaliation claim." Id. Because this test is "highly context-specific," it must be applied here "in light of the special characteristics of the school environment." Id. (citations omitted).

As an initial matter, B.A. has been less than clear about identifying the precise speech or conduct upon which this claim is based, stating in her opposition paperwork only that: (1) M.G. has a protected right to complain about the use of excessive force in the classroom; and he (2) "made actual complaints" to defendants "in addition to his parents making complaints on his behalf." Pl.'s Opp'n at 17.

B.A. is correct as the former assertion, which is presumably referring to her alleged version of the cell phone incident of December 16, 2011. See Cox, 654 F.3d at 272 ("As a general rule, student speech in school is protected under the First Amendment unless it would materially and substantially interfere with the requirements of appropriate discipline in the operation of the school."). As to the latter assertion, however, plaintiff supports this claim by offering only a single citation to the substantial discovery record—a portion of her own deposition testimony where she claimed to be present to witness M.G. directly accuse Mrs. Cristello of lying about her actions that day. See ECF No. 50-7 at 62.

---

[9] "Typically, "[t]he allegation of a chill is indispensable for private plaintiffs." Ford v. Reynolds, 167 F. App'x 248, 250 (2d Cir. 2006) (summary order). However, "[v]arious non-speech related harms" may also be sufficient to give rise to a First Amendment retaliation claim. Dorsett v. Cnty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) (collecting cases).

This claim fails as a matter of law for several reasons.  First, to the extent it is based on complaints that M.G.'s mother claims to have made to various defendants on M.G.'s behalf, those complaints are not attributable to M.G. for purposes of vindicating his own constitutional rights in this context.  Cf. <u>Martinez v. City of New York</u>, 2003 WL 2006619, at *4 (S.D.N.Y. Apr. 30, 2003) (rejecting plaintiff's assertion "that she has a First Amendment retaliation claim because her mother made complaints on her behalf" in employment context).

However, assuming otherwise "in light of the special characteristics of the school environment," a setting where a parent may feel a particular need to assert a grievance on behalf of their child, and putting aside the evidentiary complications attendant to introducing evidence of M.G.'s protected speech through his mother's deposition, this speech occurred during the investigations into the cell phone incident, all of which were concluded, at the latest, by January 27, 2012, when Superintendent Yagielski met with M.G.'s parents, presented the results of those investigations, and offered to place M.G. in a different classroom.

In other words, nearly five months passed between this speech and the only allegedly adverse action identified by B.A. as relevant here—the "time-out" on a bench during recess that M.G. was forced to endure on May 24, 2012, after he returned from his visit to the nurse's office.  So while the Second Circuit has repeatedly declined to draw "a bright line rule to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," this five-month gap, in these particular circumstances, would seem to fall on the wrong side of this outer limit.  <u>Gorman-Bakos v. Cornell Co-op Extension of</u>

Schenectady Cnty., 252 F.3d 545, 554 (2d Cir. 2001) (discussing requirement of causal connection in retaliation actions).

But even if this additional issue were also resolved in favor of B.A., the retaliation claim would still fail.  The alleged retaliatory act in this case involved M.G. being forced, on a single occasion, to sit outside in "time out" for approximately fifteen minutes after he returned from the nurse's office, resulting in a sunburn.  Although they of course dispute the necessity of this "time out," they agree that a bin did fall from a classroom shelf onto M.G.'s head that day.  Defendants' alleged conduct, under these circumstances, is precisely the sort of *de minimis* retaliatory act that is legally insufficient to support a First Amendment retaliation claim.  Cf. Cox, 654 F.3d at 274  (rejecting retaliation claim based on teacher's decision to remove student from class for an *entire* afternoon in response to student writing a violent essay and noting that "[a] school cannot function without affording teachers and administrators fair latitude" to make these sorts of decisions).

The decision to reject this claim is further reinforced by the fact that this "time out" apparently did nothing to chill anyone's speech.  As for B.A., she wrote to Superintendent Yagielski five days after this incident to complain about Mrs. Cristello and Mrs. Clark as well as express her view that "6 minutes would have been enough" of a "time out" for the bin incident.  Cf. Oliveras v. Saranac Lake Cent. Sch. Dist., 2014 WL 1311811, at *21 (N.D.N.Y. Mar. 31, 2014) (D'Agostino, J.) (rejecting similar claim where "[student] and her parents continued to complain to the District about [the student's] treatment . . . after they filed the notice of claim").  Equally important, the parties have failed to identify anything in the record to indicate that this single, brief "time out" period had any discernible effect, let alone a chilling one, on M.G. himself.  Id. (rejecting retaliation claim and noting that "[p]laintiffs must

establish that the conduct *actually* chilled the exercise of [the student's] rights, not that the conduct would have made a reasonable child forego the exercise of his or her rights").

In essence, accepting the retaliation theory offered here would subject an entire range of day-to-day decision-making by a school teacher to constitutional attack, regardless of whether B.A.'s claim is based on M.G. allegedly confronting Mrs. Cristello for lying or whether it is also based on the additional complaints plaintiff claims to have made to defendants on M.G.'s behalf. Accordingly, plaintiff's retaliation claim must also be dismissed.

### C. Remaining Claims

Where, as here, a plaintiff's federal claims will be dismissed before trial, a district court should generally decline to exercise supplemental jurisdiction over any state law claims absent exceptional circumstances. <u>Genovese v. Town of Southampton</u>, 921 F. Supp. 2d 8, 26 (E.D.N.Y. 2013) (collecting cases); <u>see also</u> <u>Miron v. Town of Stratford</u>, 976 F. Supp. 2d 120, 151 (D. Conn. 2013) ("Supplemental or pendent jurisdiction is a matter of discretion, not of right. Thus the court need not exercise supplemental jurisdiction in every case.").

There are no exceptional circumstances present in this case that might warrant a different conclusion. Because summary judgment will be granted as to the federal law claims against defendants, the exercise of supplemental jurisdiction over plaintiff's various state law claims will be declined. 28 U.S.C. § 1367(c)(3). Accordingly, those state law claims will be dismissed without prejudice.

## V.  CONCLUSION

The incidents at the heart of this lawsuit, even viewed in the light most favorable to B.A., do not entail conduct of constitutional proportions. Since these § 1983 claims fail as a matter of law, it is therefore unnecessary to determine whether qualified immunity might also

operate to shield defendants' alleged conduct from liability.  See Ctr. Moriches Union Free Sch. Dist., 898 F. Supp. 2d at 559 ("Without an underlying constitutional violation, qualified immunity cannot attach.").  The same is true regarding plaintiff's Monell claims.  See Khan v. Ryan, 145 F. Supp. 2d 280, 285 (E.D.N.Y. 2001) ("If there is no underlying constitutional violation by a municipal official, the municipality is not liable.").

Therefore, it is

ORDERED that

1.  Defendants' motion for summary judgment is GRANTED in part and DENIED in part;

2.  Plaintiff's substantive due process and retaliation claims brought pursuant to 42 U.S.C. § 1983 are DISMISSED; and

3.  Jurisdiction over plaintiff's state law claims is DECLINED and those claims are DISMISSED without prejudice.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

United States District Judge

Dated:  September 19, 2016
          Utica, New York.